**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

CASSANDRA WHITE,

Plaintiff,

-against-

MANHATTAN AND BRONX SURFACE TRANSIT OPERATING AUTHORITY, and THE METROPOLITAN TRANSIT AUTHORITY,

Defendants.

MEMORANDUM DECISION AND ORDER

18 Civ. 3627 (GBD)

GEORGE B. DANIELS, District Judge:

Plaintiff Cassandra White brings this action against her former employer, the Manhattan and Bronx Surface Transit Operating Authority, as well as against the Metropolitan Transportation Authority, for gender-based and pregnancy discrimination, failure to accommodate, retaliation, and hostile work environment in violation of 42 U.S.C. § 1983, the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* ("NYSHRL") and the New York City Administrative Code § 8-107 ("NYCHRL"). (Complaint ("Compl."), ECF No. 1–1.) Plaintiff alleges that she was harassed by a fellow employee, that this conduct created a hostile work environment, and that she was discriminated and retaliated against after making complaints about the conduct. (*Id.* ¶¶ 34–44.) In recompense for Defendants' alleged course of action, Plaintiff seeks compensatory and punitive damages, as well as declaratory and permanent injunctions declaring Defendants' actions illegal and enjoining them from any further such conduct. (*Id.* ¶¶ 45–80.)

Before this Court is Defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, seeking dismissal of Plaintiff's claims. (Notice of Motion, ECF No. 52.) Defendants' motion is GRANTED.

## I. FACTUAL BACKGROUND

The following facts are undisputed unless otherwise indicated. Plaintiff Cassandra White is a former bus operator with Defendant Manhattan and Bronx Surface Transit Operating Authority ("MaBSTOA"). (Pl.'s Counterstatement to Defs.' Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1 ("Pl.'s Counterstatement"), ECF No. 63 ¶¶ 12–13.) In 2009, Plaintiff began a romantic relationship with a fellow MaBSTOA bus operator, Frank Austin.[1] (*Id.* ¶ 19.) In addition to his employment with MaBSTOA, Austin held an elected position with Transit Workers Local 100, a union of public employees. (*Id.* ¶ 10, 18.) In that capacity, Austin represented MaBSTOA bus operators in grievances, disciplinary actions and other union matters. (*Id.* ¶ 18.) Plaintiff and Austin's relationship lasted approximately two years. (*Id.* ¶ 19.)

According to the allegations in the Complaint, following their break-up in 2012, Austin embarked on a course of conduct designed to intimidate and harass Plaintiff. (Pl.'s Counterstatement ¶ 21.) Specifically, Plaintiff alleges that Austin repeatedly called her on her personal cell phone, enlisted others to contact her on his behalf, stalked her at work, and convinced another MaBSTOA bus operator, Kisses Moreno, to run Plaintiff over with a bus in 2012. (*Id.* ¶¶ 21, 39, 49.) An investigation into Plaintiff's allegations against Ms. Moreno, including review of relevant video surveillance footage, revealed no evidence that any such assault occurred, and MaBSTOA considered initiating disciplinary proceedings against Plaintiff for filing a false report.[2]

---

[1] Initially named in the Complaint, Plaintiff voluntarily dismissed all claims against Austin with prejudice in February 2021. (ECF No. 35.)

[2] These charges, whether contemplated or actual, were ultimately resolved pursuant to an agreement negotiated by Plaintiff's union representative. (*Id.* ¶ 42.) Among other conditions of the agreement, Plaintiff agreed to be charged vacation days for the time she was held out of service while her claims were being investigated. (*Id.*) Plaintiff alleges that disciplinary charges were never actually filed, and that she was "coerced into executing the [agreement] under threat of immediate termination." (*Id.* ¶¶ 41–42.) The parties' factual disputes surrounding the resolution of the Kisses Moreno incident are irrelevant to this Court's determination on the instant motion.

(*Id.* ¶¶ 40–41.) Plaintiff also alleges that Austin had the authority to adjust shifts and assignments of MaBSTOA bus operators, and that, after their relationship ended, Austin intentionally assigned her to less-desirable shifts.[3] (*Id.* ¶ 22.) As a result of Austin's alleged actions, Plaintiff claims that she developed post-traumatic stress disorder and depression. (Compl. ¶ 21.)

On January 10, 2014, Plaintiff filed a petition against Austin in Bronx Family Court. (Pl.'s Counterstatement ¶ 54.) There, Plaintiff alleged that Austin was stalking and harassing her, that he had posted sexually explicit photos of her on social media, and that he had tried to get her fired from MaBSTOA because she would not resume a relationship with him. (*Id.*) In connection with that petition, Plaintiff sought an order of protection against Austin. (*Id.*) After a two-day hearing, the Family Court determined that Plaintiff's testimony was not credible and that she had no independent evidence to support her claims against Austin. (*Id.* ¶¶ 55–56.)

Shortly after she filed her family offense petition, Plaintiff attended a sexual harassment training session at her assigned bus depot. (Pl.'s Counterstatement ¶ 58.) While there, she observed Austin from a distance.[4] (*Id.* ¶ 59.) Austin did not speak to Plaintiff. (*Id.* ¶ 61.) According to Plaintiff, Austin's presence at the depot violated a temporary order of protection entered by the Family Court, then still in effect, and she called the police. (*Id.* ¶ 62.) No police action was taken. (*Id.*)

Coincident with this series of events, Plaintiff had several extended absences from work. In 2010, Plaintiff was involved in a vehicular accident while on the job, causing her to sustain injuries to her left shoulder and right knee. (Pl.'s Counterstatement ¶ 36.) Plaintiff was placed on

[3] Defendants maintain that Austin did not have the authority or ability to modify driver assignments. (Pl.'s Counterstatement ¶ 22.)

[4] Austin did not work at the same depot as Plaintiff, but his union position sometimes required that he attend meetings at depots other than the one to which he was assigned. (*Id.* ¶ 60.)

medical leave and informed by MaBSTOA that an extended absence from work could result in the termination of her employment pursuant to New York Civil Service Law.[5] (*Id.*) She resumed work on October 10, 2011. (*Id.* ¶ 38.) Next, in 2014, Plaintiff sought Worker's Compensation benefits based on claims that she was suffering from post-traumatic stress disorder caused by Austin's alleged harassment. (*Id.* ¶ 65.) She was out of work for over a year on these claims, from January 2014 until March 2015. (*Id.* ¶¶ 64, 66.)

Before she returned to work in March 2015, Plaintiff submitted a request to NYCTA's Equal Employment Opportunity ("EEO") office seeking a "reasonable accommodation" that would limit Austin's presence at the depot to which Plaintiff was assigned. (Pl.'s Counterstatement ¶ 70.) While this request was pending, and after she returned to work, Plaintiff reported to EEO that she had seen Austin on two occasions in her depot's employee break room and that he had displayed "intimidating gestures and body posture." (*Id.* ¶ 71–72.) Plaintiff did not claim that Austin spoke with her on either occasion. (*Id.*)

After an investigation, the EEO found no violation of MaBSTOA's discrimination or harassment policies. (Pl.'s Counterstatement ¶¶ 73–74.) Notwithstanding this determination, Defendants offered to transfer Plaintiff to another depot. (*Id.* ¶ 75.) Plaintiff declined the offer. (*Id.*) Shortly thereafter, Plaintiff took medical leave for alleged injuries sustained on the job, (*id.* ¶ 76), and on August 13, 2015, MaBSTOA sent Plaintiff a letter advising her that she was once again at risk of losing her employment if she did not return to work by April 21, 2016, (*id.* ¶ 77). The letter also advised Plaintiff that, if she was no longer able to perform the functions of a bus operator, she could seek reclassification into a different title. (*Id.*)

---

[5] The New York Civil Service Law allows Defendants to terminate an employee who is cumulatively absent for more than one year where the employee is unable to perform the essential duties of his or her position. N.Y. Civil Service L. § 71.

In February 2016, Plaintiff requested reclassification into either of the only two options available within MaBSTOA to someone in Plaintiff's position and of her qualifications: bus cleaner or transit property protection agent ("TPPA"). (Pl.'s Counterstatement ¶ 78.) Both positions require a candidate to clear a medical examination before appointment. (*Id.* ¶ 79.) On April 25, 2016, Plaintiff underwent medical evaluation by an NYCTA physician.[6] (*Id.* ¶ 80.) On the occupational health questionnaire she completed that day, Plaintiff complained of back pain and several conditions that prevented her from bending, pulling, standing, or lifting. (*Id.* ¶ 81.) Based on these answers and the subsequent medical examination, the NYCTA denied Plaintiff's reclassification request due to her inability to stand for long periods of time, as is required of a MaBSTOA cleaner or TPPA. (*Id.* ¶ 82.)

Based on the results of the medical evaluation, Plaintiff was also deemed medically unable to continue work as a bus operator, and her employment was terminated on April 27, 2016. (Pl.'s Counterstatement ¶ 83.) On May 5, 2016, Plaintiff submitted Worker's Compensation paperwork indicating, as she had in her occupational health questionnaire, that she was unable to stand for long periods of time and that she required assistance from others when lifting and carrying objects. (*Id.* ¶ 85.) The next day, Plaintiff requested to be reinstated as a bus operator and underwent medical evaluation in connection with that request. (*Id.* ¶ 86–87.) The evaluating physician noted that Plaintiff was pregnant but deemed her medically qualified to return to work as a bus operator. (*Id.* ¶ 87.) Plaintiff returned on June 27, 2016. (*Id.* ¶ 88.) Just over a month later, on August 1, 2016, Plaintiff reported that she was again unable to work due to pain in her hands caused by carpal

[6] Plaintiff did not submit evidence, either at the time she requested classification in 2016 or in connection with Defendant's instant motion for summary judgment, from a private physician to counter the NYCTA's findings that she was medically unqualified for reclassification.

tunnel syndrome and she again requested Worker's Compensation benefits. (*Id.* ¶ 91–92.) Following a six-month absence, Plaintiff returned to work on February 14, 2017. (*Id.* ¶ 99.)

Three days after her return, on February 17, 2017, Plaintiff was informed by a colleague that Austin had been promoted to the position of Superintendent. (Pl.'s Counterstatement ¶ 100.) Austin's promotion elevated his position at a different depot than the one at which Plaintiff worked, and Austin's new position came with no supervisory control or contact with Plaintiff. (*Id.* ¶ 101.) Plaintiff incorrectly assumed that Austin had become her direct supervisor, however, and she suffered emotional distress at the news. (*Id.* ¶ 102.) She was hospitalized for eight days. (*Id.*) On February 18, 2017, Plaintiff claimed that she was unable to work as a result of being informed that Austin had been promoted, which she says triggered her post-traumatic stress disorder. (*Id.* ¶ 104.) Upon her transfer to an in-patient psychiatric specialty center, Plaintiff was evaluated and deemed unfit to return to work on multiple occasions in 2017. (*Id.* ¶¶ 107–10, 112–14.) On May 10, 2017, Plaintiff was advised that her employment status was being reevaluated, (*id.* ¶ 111), and on September 14, 2017, Plaintiff was terminated, (*id.* ¶ 115). She has not since sought a return to work. (*Id.* ¶ 117.)

## II. LEGAL STANDARD

Summary judgment is appropriate where the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A fact is material when it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of fact is genuine "if the evidence is such that a jury could return a verdict for the nonmoving party." *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002) (quoting *Anderson*, 477 U.S. at 248.)

The party seeking summary judgment has the burden of demonstrating that no genuine issue of material fact exists. *See Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002). In turn, to defeat a motion for summary judgment, the opposing party must raise a genuine issue of material fact. *See Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002). To do so, it "must do more than simply show that there is some metaphysical doubt as to the material facts," *id. (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)), and it "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (*quoting Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)). Rather, the opposing party must produce admissible evidence that supports its pleadings. *See First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289–90 (1968). In this regard, "[t]he 'mere existence of a scintilla of evidence' supporting the non-movant's case is also insufficient to defeat summary judgment." *Niagara Mohawk Power Corp. v. Jones Chem., Inc.*, 315 F.3d 171, 175 (2d Cir. 2003) (quoting *Anderson*, 477 U.S. at 252).

In determining whether a genuine issue of material fact exists, a court must construe the evidence in the light most favorable to the opposing party and draw all inferences in that party's favor. *Niagara Mohawk Power Corp. v. Jones Chem., Inc.*, 315 F.3d 171, 175 (2d Cir. 2003) (citing *Anderson*, 477 U.S. at 252). However, to defeat a motion for summary judgment, the nonmoving party must provide "hard evidence," *D'Amico v. City of N.Y.*, 132 F.3d 145, 149 (2d Cir. 1998), "from which a reasonable inference in [its] favor may be drawn," *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007) (internal quotations omitted). "[S]ummary judgment may be appropriate even in the fact intensive context of discrimination cases." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 465 (2d Cir. 2001).

## III. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON ALL CLAIMS

Plaintiff's Complaint brings six causes of action under federal, state, and city law for gender and pregnancy discrimination, failure to accommodate, unlawful retaliation, and hostile work environment. (Compl. ¶¶ 44–59.) For the following reasons, summary judgment is granted for Defendants on all claims.

### A. Plaintiff Fails to Establish a Prima Facie Case of Gender or Pregnancy Discrimination

Plaintiff's First, Second, and Sixth Causes of Action allege that Defendants discriminated against her on the basis of her gender and pregnancy in violation of 42 U.S.C. § 1983, the NYSHRL, and the NYCHRL.[7] The Court reviews discrimination claims under Section 1983 and the New York State Human Rights Law identically. *Raspardo v. Carlone*, 770 F.3d 97, 125 (2d Cir. 2014) (holding that the same standard applies to discrimination claims under both Title VII and Section 1983); *see Hyek v. Field Support Servs., Inc.*, 461 F. App'x. 59, 60 (2d Cir. 2012) (claims brought under federal law and the NYSHRL "are analyzed identically"). Such claims generally fall under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 803–805 (1973). *See e.g., Naumovski*, 934 F.3d at 214 (applying *McDonnell Douglas* framework to Section 1983 sex discrimination case); *Sorlucco v. New York City Police*

---

[7] Under federal law, the NYSHRL, and the NYCHRL, discrimination on the basis pregnancy—including because of any "related medical conditions"—constitutes discrimination "on the basis of sex." *See Reilly v. Revlon, Inc.*, 620 F.Supp.2d 524, 544 (S.D.N.Y. 2009) (applying federal law) (quoting 42 U.S.C. § 2000e(k)); *Quaratino v. Tiffany & Co.*, 71 F.3d 58, 63 (2d Cir. 1995) (noting that the NYSHRL "provides the same sort of protection" regarding pregnancy discrimination as federal law); *EEOC v. Bloomberg L.P.*, 967 F.Supp.2d 816, 837 (S.D.N.Y. 2013) (pregnancy discrimination claim under NYCHRL requires only that Plaintiff demonstrate "that she has been treated less well than other employees because of her gender" (quoting *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013))). The elements of a pregnancy discrimination claim are the same as for a generic gender-based discrimination claim under federal, state, and city law. *Compare Bloomberg L.P.*, 967 F.Supp.2d at 833 (setting forth elements of a prima facie case for pregnancy discrimination) *with Naumovski v.* Norris, 934 F.3d 200, 214 n. 39 (2d Cir. 2019) (same regarding gender-based discrimination claims).

*Dep't*, 888 F.2d 4, 7 (2d Cir.1989) (holding that the *McDonnell Douglas* framework applies to Section 1983 cases); *Lam v. Sephora USA Inc.*, 488 F. App'x. 487, 489 (2d Cir. 2012); *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012). Under *McDonnell Douglas*, a plaintiff must first establish a prima facie cause of discrimination by showing that (1) she belonged to a protected class; (2) she was qualified for the position she occupied; (3) she was subject to an adverse employment action; and (4) the circumstances surrounding the adverse action give rise to an inference of discrimination. *Brown*, 673 F.3d at 150. Once the plaintiff makes such a showing, the burden shifts to the defendant to show a non-discriminatory reason for the action. *Lam*, 488 F. App'x. at 489 (citing *Patterson*, 375 F.3d 206 (2d Cir. 2004)). If the defendant successfully makes such a showing, the burden shifts back to the plaintiff to show that the defendant's proffered reason is pretextual. *Id.* Conclusory allegations of discrimination are insufficient to show that a defendant's non-discriminatory reasons are pretexts. *See Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985); *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 170 (2d Cir. 2014) (citing *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 101 (2d Cir. 2010)).

The standard under the NYCHRL is more liberal. To establish a gender discrimination claim under the NYCHRL, the plaintiff need only show that her employer treated her less well, at least in part for a discriminatory reason. *Mihalik*, 715 F.3d at 110.

**1. Discrimination under Section 1983 and the NYSHRL**

Plaintiff's federal and state discrimination claims fail at the fourth step of the *McDonnell Douglas* analysis because Plaintiff has not raised any inference of discrimination as to any adverse

employment action.[8] Inference of discrimination is a "flexible [standard] that can be satisfied differently in differing factual scenarios." *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 91 (2d Cir. 1996). The Second Circuit has found that a variety of circumstances can give rise to an inference of discriminatory motive, including:

> "the employer's continuing, after discharging the plaintiff, to seek applicants from persons of the plaintiff's qualifications to fill that position; or the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge."

*Abdu-Brisson*, 239 F.3d at 468 (citing *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir. 1994)).

Here, Plaintiff has not adduced any evidence to support an inference of discriminatory intent under any of these scenarios. She does not identify any derogatory statements about her gender or pregnancy by any person with whom she worked, and she does not even allege, let alone prove, that her treatment was inferior to that afforded to any other individuals employed by Defendants. Nor does the sequence of events leading up to Plaintiff's termination—her several extended absences and her repeated failure to achieve medical clearance to resume work—support an inference that she was discharged for any reason other than her poor attendance and medical inability to do the job. In short, Plaintiff has offered no competent evidence whatsoever to support her complaint's hypothesis that the reason behind Defendants' adverse employment decisions was her gender or pregnancy. Plaintiff's subjective belief that that is the case, without more, is insufficient to sustain her claim at summary judgment.

---

[8] The only two purported adverse employment actions at issue are Plaintiff's termination and the denial of her request for reclassification into a different role within MaBSTOA. Because Plaintiff's failure to establish an inference of discrimination is fatal to her claim, this Court need not and does not resolve here whether the denial of Plaintiff's reclassification request constitutes an "adverse employment action." It is undisputed that Plaintiff's termination so qualifies. (*See* Defs.' Mem. of Law in Supp. of Defs.' Mot. for Summ. J. ("Defs.' MSJ"), ECF No. 56, at 12.)

Even if Plaintiff had met her burden under *McDonnell Douglas*, Defendants have articulated legitimate, non-discriminatory reasons for terminating Plaintiff and denying her reclassification request that Plaintiff cannot show are pretextual. Specifically, Defendants have presented substantial evidence that Plaintiff's termination was the result of Plaintiff's several extended absences from work, and that her request to be reassigned to a different role within MaBSTOA was denied because she was not medically cleared for reclassification. (Defs.' MSJ at 13–15, 18 (citing record).) In response, Plaintiff does not even contend, let alone demonstrate, that Defendants' reasons are pretexts for discrimination. She does not contest that her termination was lawful or that she was medically unfit for the two positions for which she sought reclassification, and she does not identify any other purported adverse action taken against her. In fact, Plaintiff's response to Defendants' motion does not mention her discrimination claims at all.[9]

In sum, Plaintiff has not proffered any competent evidence to establish that her termination or the denial of her reclassification request occurred under circumstances giving rise to an inference of discrimination, or that Defendants' proffered explanations for taking these actions are pretextual. The Court therefore dismisses Plaintiff's first cause of action, as well as her sixth cause of action insofar as it alleges gender or pregnancy discrimination.[10]

---

[9] Plaintiff's failure to oppose Defendants' motion on this ground is independent grounds for dismissal of her discrimination claims. *Camarda v. Selover*, 673 F. App'x 26, 30 (2d Cir. 2016) ("Where, as here, a counseled non-moving party submits "a partial response arguing that summary judgment should be denied as to some claims while not mentioning others," that response "may be deemed an abandonment of the unmentioned claims.") (quoting *Jackson v. Federal Express*, 766 F.3d 189, 195 (2d Cir. 2014)); *see also Malik v. City of New York*, 841 F. App'x 281, 284 (2d Cir. 2021).

[10] Plaintiff's sixth cause of action also makes passing reference to a claim of race discrimination in violation of 42 U.S.C.§ 1981. (Compl. ¶ 59.) Plaintiff withdrew this claim at oral argument, (Tr. 12:18–19), and, in any event, it fails for the same reasons as Plaintiff's gender-based and pregnancy discrimination claims.

### 2. Discrimination under the NYCHRL

Plaintiff's NYCHRL claims fare no better. As explained above regarding her Section 1983 and NYSHRL claims, Plaintiff fails to show that gender or pregnancy animus played any role in her termination or in the denial of her reclassification request, or that she was ever treated less well because of her gender or pregnancy. Her second cause of action is therefore dismissed.

## B. Defendants are Entitled to Summary Judgment on Plaintiff's Failure to Accommodate Claims

Plaintiff's Third and Fourth Causes of Action allege that Defendants engaged in unlawful discrimination by refusing to accommodate her pregnancy.[11] Plaintiff's failure to accommodate claims are premised upon (i) her 2015 request that Defendants limit Frank Austin's ability to conduct union business at the bus depot to which Plaintiff was assigned, (Pl.'s Counterstatement ¶ 70; *see also* Pl.'s Opp. to Defs.' MSJ ("Pl.'s Opp."), ECF No. 62, at 13); and (ii) her 2016 request for reclassification into a different role within MaBSTOA, (Pl.'s Counterstatement ¶ 78; *see also* Pl.'s Opp. at 13). In either case, Plaintiff's claims fail.

First, there is no basis on which a reasonable jury could conclude that Defendants refused to provide Plaintiff a reasonable accommodation during her pregnancy because, as Defendant's correctly note, neither of Plaintiff's requests had anything to do with her pregnancy. According to Plaintiff, "in 2015, Plaintiff contacted EEO prior to her return to work *in order to request the ability to work outside the presence of Austin*"—not due to any pregnancy-related restriction on her ability to perform her job duties. (Pl.'s Opp at 17 (emphasis added); *see also* Pl.'s

---

[11] In her opposition to Defendants' motion for summary judgment, Plaintiff argues for the first time that Defendants also failed to accommodate her post-traumatic stress disorder. (Pl.'s Opp. at 17–18, 20.) Because Plaintiff raises these claims "for the first time in opposition to summary judgment," they "need not be considered." *See e.g., Lyman v. CSX Transp., Inc.*, 364 F. App'x 699, 701 (2d Cir. 2010); *see also* Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1183, at n. 11 (4th ed. 2022) ("An opposition to a summary judgment motion is not the place for a plaintiff to raise new claims.").

Counterstatement ¶ 70.) In fact, Plaintiff was not even pregnant in 2015.[12] Respecting her reclassification request, Plaintiff admits that she only "requested that she be reclassified … so as not to be around Austin." (*Id.*) Because these requests were not made on account of Plaintiff's pregnancy, they cannot form the basis of Plaintiff's pregnancy discrimination claims.

Second, and with respect to Plaintiff's 2016 request for reclassification, Plaintiff's claims fail for the additional reason that Plaintiff has not established that she could have performed the essential functions of a cleaner or TPPA with reasonable accommodation. To establish a prima facie case for failure to accommodate, the NYSHRL and NYCHRL both require a plaintiff to show that she could "satisfy the essential requisites of the job" with reasonable accommodation. *Gorbea v. Verizon New York Inc.*, No. 20-3486, 2021 WL 4851389, at *3 (2d Cir. Oct. 19, 2021), cert. denied, 142 S. Ct. 1672 (2022); *Lazzari v. New York City Dep't of Parks & Recreation*, 751 F. App'x 100, 102 (2d Cir. 2018). Here, the undisputed record reflects that Plaintiff was medically unqualified to perform the essential functions of either the cleaner or TPPA positions, with or without an accommodation. Both roles require candidates to have "considerable strength," physical stamina, body coordination and flexibility, and to be able to "stand for lengthy periods of time," "walk up and down stairs and over extended distances where a live third rail may be present," and withstand prolonged exposure to "soaps and detergents" and "dust and industrial gas." (Pl.'s Counterstatement ¶¶ 33–34.) Plaintiff's own representations regarding her medical restrictions in 2016, described *supra* Section I, defeat any suggestion that any accommodation

[12] Even if this request was pregnancy-related, Plaintiff's claim still fails because Defendants did offer a reasonable accommodation in response to this request. Although EEO's investigation determined there was no merit to Plaintiff's claims against Austin, Defendants offered to transfer Plaintiff to another work location. (Pl.'s Counterstatement ¶ 75.) Plaintiff is not entitled to the specific accommodation she requests, and her refusal to accept the accommodation Defendants offered does nothing to detract from its reasonableness. *See Fink v. N.Y.C. Dep't of Personnel*, 53 F.3d 565, 567 (2d Cir. 1995) (an employer need not "provide every accommodation the disabled employee may request, so long as the accommodation provided is reasonable.")

would have enabled her to perform the essential duties of cleaner or TPPA, and Plaintiff makes no attempt to argue otherwise. To the extent Plaintiff complains that the only two roles offered to her for potential reassignment were that of cleaner or TPPA, (Pl.'s Opp. at 13), her failure to identify another existing role as a suitable replacement defeats her claim. *See Jackan v. New York State Dep't of Labor*, 205 F.3d 562, 566–67 (2d Cir. 2000) (plaintiff alleging failure to accommodate by neglecting to reassign plaintiff to a suitable vacant position bears the burden of proving existence of the vacancy).[13] In any event, Defendants have demonstrated that no other position existed within MaBSTOA, (Pl.'s Counterstatement ¶ 33), and Plaintiff's suggestion that Defendants should have created a new role for her is not a reasonable one, *see Thompson v. N.Y. City Dep't of Prob.*, 348 F. App'x. 643, 645 (2d Cir. 2009) (an "employer need not find or create a position for the employee.").

Plaintiff's failure to link her accommodation requests to her pregnancy or to carry her burden of showing a reasonable accommodation that would have enabled her to perform the essential functions of cleaner or TPPA entitles Defendants to summary judgment on Plaintiff's Third and Fourth Causes of Action.

### C. Plaintiff Fails to Establish a Prima Facie Case of Retaliation

Plaintiff's Fifth Cause of Action alleges that "the acts of the defendant[s] constituted unlawful retaliation" for her "assertion of sexual harassment and discrimination" in violation of the NYSHRL and the NYCHRL. (Compl. ¶ 56.) To establish a prima facie case of retaliation under the NYSHRL, a plaintiff-employee must show that (1) she engaged in protected activity; (2)

---

[13] Although *Jackan* analyzes a failure to accommodate claim brought under the Americans with Disabilities Act ("ADA"), the elements to find discrimination under the NYSHRL and NYCHRL track those under the ADA. *Kinneary v. City of New York*, 601 F.3d 151, 158 (2d Cir. 2010) ("[T]he same elements that must be proven to establish an ADA claim must be also demonstrated to prove claims under NYSHRL and NYCHRL.").

the employer was aware of this activity; (3) the employer took adverse action against the employee; and (4) a causal connection exists between the protected activity and the adverse action. *Summa v. Hofstra Univ.*, 708 F.3d 115, 125 (2d Cir. 2013). The NYCHRL, by contrast, is slightly more solicitous of retaliation claims than state law because, rather than requiring a plaintiff to show an adverse employment action, it only requires action that was "reasonably likely to deter a person from engaging in protected activity." *Mestecky v. New York City Dep't of Educ.*, 791 F. App'x 236, 239 (2d Cir. 2019) (citation omitted). Otherwise, a prima facie case of retaliation faces the same requirements under the NYCHRL as under the NYSHRL. *See id.*

It is undisputed that Plaintiff engaged in protected activity on two occasions: first, in April 2014, when she contacted NYCTA's EEO office regarding alleged harassment by Frank Austin, and second, in February of 2015, when Plaintiff submitted a "written request" to EEO seeking a "reasonable accommodation" to limit Austin's presence at the depot at which she worked. (Defs.' MSJ at 21.) It is also undisputed that Defendants were aware of Plaintiff's complaints about Austin, and that Defendants took adverse action against Plaintiff when they terminated her. (*Id.* at 12, 21.)

Nevertheless, Plaintiff cannot make out a prima facie case of retaliation because no reasonable juror could find that the alleged adverse employment actions were causally related to her protected activity. A plaintiff may present proof of causation either "directly, through evidence of retaliatory animus directed against the plaintiff by the defendant," or "indirectly, by showing that the protected activity was followed closely by discriminatory treatment." *Gordon v. N.Y. City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000) (citing *Cosgrove v. Sears, Roebuck & Co.*, 9 F.3d 1033, 1039 (2d Cir. 1993)). Taking each in turn, Plaintiff has adduced absolutely no evidence of retaliatory animus. As discussed above, Defendants have adduced evidence of legitimate reasons

for the alleged retaliatory conduct that Plaintiff fails to rebut,[14] and no reasonable jury could conclude that these asserted reasons were pretextual. Nor has Plaintiff shown any temporal connection between her 2014 and 2015 complaints and the adverse actions taken against her in 2016. Both purported adverse employment actions—Plaintiff's termination and the denial of her request for reclassification—occurred in April 2016, more than one year after the later of Plaintiff's two complaints regarding Austin. This temporal sequence fails as a matter of law to establish that Plaintiff's harassment complaints prompted her termination or the denial of her request for reclassification. *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001) (the "temporal proximity between an employer's knowledge of protected activity and an adverse employment action … must be very close" and citing with approval cases holding that even intervals of three and four months were too long).

Accordingly, Defendants' motion for summary judgment is granted in this respect and Plaintiff's Fifth Cause of Action is dismissed.

**D. Plaintiff's Hostile Work Environment Claim Fails**

Finally, Plaintiff brings a claim for hostile work environment pursuant to Section 1983.[15] To succeed on a hostile work environment claim, a plaintiff must show that her "workplace is permeated with discriminatory intimidation, ridicule, and insult, ... that is sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment[.]" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quotations omitted). To satisfy the "severe or pervasive" standard, "[a] plaintiff must show not only that she subjectively

---

[14] As with her discrimination claims, Plaintiff's opposition makes no mention of her retaliation claim. Plaintiff's abandonment of this claim is separate grounds for dismissal. *Camarda*, 673 F. App'x at 30.

[15] Although Plaintiff's complaint predicates her hostile work environment claim on federal law only, Plaintiff's opposition defends a hostile work environment brought pursuant to the NYSHRL. (Pl.'s Opp. at 11–13.) Under either federal or state law, Plaintiff's claims fail for the reasons articulated herein.

perceived the environment to be abusive, but also that the environment was objectively hostile and abusive." *Harvin v. Manhattan & Bronx Surface Transit Operating Auth.*, 767 F. App'x 123, 128 (2d Cir. 2019) (citation omitted). The Supreme Court has specifically articulated that "[c]onduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment that a reasonable person would find hostile or abusive" is not actionable. *Harris*, 510 U.S. at 21–22. In analyzing whether a plaintiff has met her burden, "courts should examin[e] the totality of the circumstances, including: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the victim's [job] performance." *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2014) (quotation omitted). In doing so, courts have repeatedly held that a "mere utterance of an ... epithet which engenders offensive feelings in an employee, ... does not sufficiently affect the conditions of employment" as to violate federal law. *Harris*, 510 U.S. at 21 (quotation omitted). Moreover, "[s]imple teasing, offhand comments, or isolated incidents of offensive conduct (unless extremely serious) will not support a claim of discriminatory harassment." *Petrosino v. Bell Atl.*, 385 F.3d 210, 223 (2d Cir. 2004) (citations omitted). To establish a hostile work environment, a plaintiff must also demonstrate that the discriminatory conduct occurred because of her membership in a protected class. *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002).

After reviewing the entire record and assessing the facts in the light most favorable to Plaintiff, this Court concludes that Plaintiff has not put forth any evidence of any conduct that would rise to the level required to sustain a hostile work environment claim. At most, Plaintiff has established an environment that involved sporadic, chance encounters with Austin during which time Austin "turned to her and made menacing faces and postures." (Pl.'s Opp. at 16.) Plaintiff

cites four incidents in support of her claim, none of which suffice to establish a hostile work environment. First, Plaintiff alleges, but offers no evidence to support, that Austin stalked her and repeatedly phoned her in 2012 and 2013. (*Id.* at 18.) Allegations do not suffice on summary judgment, and in any event, this conduct is unrelated to Plaintiff's employment and time-barred. Next, Plaintiff points to the Kisses Moreno incident, (*id.*), which the undisputed evidence shows did not happen, (Pl.'s Counterstatement ¶¶ 40–41). Third, Plaintiff cites the January 2014 encounter with Austin in which Austin arrived at the depot at which Plaintiff was attending mandatory sexual harassment training. (Pl.'s Opp. at 18.) It is undisputed that Austin did not speak to Plaintiff at that time, and the record presents conflicting testimony as to whether Austin entered the room. (Pl.'s Counterstatement ¶ 59.) According to Plaintiff, Austin gave her an "attitude." (*Id.*; Pl.'s Opp. at 18.) Finally, Plaintiff complains that, in 2012, MaBSTOA's Head of Labor Relations, Hillary Tomlinson, coerced Plaintiff into signing a stipulation to settle an employee disciplinary proceeding brought against Plaintiff for fabricating the Kisses Moreno incident. (Pl.'s Opp. at 18.) Even if this Court accepts Plaintiff's unsupported version of events with respect to these incidents and ignores that each is time-barred, this conduct falls far short of establishing a workplace "severely permeated with discriminatory intimidation, ridicule, and insult."[16] *See Wesley-Dickson v. Warwick Valley Cent. Sch. Dist.*, 586 F. App'x 739, 745 (2d Cir. 2014) (quotation omitted). Nor do these actions appear to have any connection to Plaintiff's gender or any other protected characteristic. Accordingly, Plaintiff has failed to establish a triable issue

---

[16] While Plaintiff may very well have been *subjectively* upset by Austin's presence, (*see* Pl.'s Opp. at 12 (setting forth evidence of Plaintiff's post-traumatic stress disorder and Worker's Compensation Board's finding of the same)), she ignores the requirement that the conduct also be *objectively* hostile. *See Harvin*, 767 F. App'x at 128.

of material fact to support her claim of a pervasive and continuous atmosphere of gender discrimination.

Further, even if Plaintiff's allegations were supported by the factual record and sufficiently severe and pervasive enough to establish a hostile work environment claim, they are time-barred. Plaintiff acknowledges the untimeliness of her claims but argues that the aforementioned conduct reveals a pattern of discriminatory conduct sufficient to support a continuing violations theory. (Pl.'s Opp. at 18–19.) Although it is well-accepted that the continuing violation doctrine may be invoked in hostile work environment claims, *see Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002), Plaintiff's application of the doctrine is misguided. To successfully invoke the doctrine, Plaintiff must point to at least one timely act that is sufficiently related to acts preceding the limitations period. *Staten v. City of New York*, 653 F. App'x 78, 80 (2d Cir. 2016). Here, none of the incidents to which Plaintiff points are timely, as they all occurred before March 2014.[17] Having proffered no evidence—or allegation, for that matter—that any act of harassment occurred after March 27, 2014, Plaintiff cannot rely on the continuing violations doctrine to sweep in conduct she alleges occurred prior to that date.

Accordingly, based on the absence of any evidence to suggest that the circumstances of Plaintiff's work environment were so objectively threatening or harassing as to have adversely altered her working conditions, this Court concludes that a reasonable jury could not find that Defendants subjected Plaintiff to a hostile work environment. The Court therefore grants

---

[17] The applicable statute of limitations under Section 1983, the NYSHRL, and the NYCHRL is three years. *Baroor v. New York City Dep't of Educ.*, 362 F. App'x 157, 160 (2d Cir. 2010); *Lugo v. City of New York*, 518 F. App'x 28, 29 (2d Cir. 2013). Plaintiff filed her Complaint on March 27, 2017. (Compl. at 10.) Any claims that accrued on or before March 27, 2014 are therefore time-barred.

Defendants' motion for summary judgment with respect to Plaintiff's Sixth Cause of Action insofar as it alleges a hostile work environment claim.

## IV. CONCLUSION

Defendants' motion for summary judgment, (ECF No. 52), is GRANTED and this action is dismissed.[18]

The Clerk of the Court is hereby ordered to close this action.

Dated: September 13, 2022
New York, New York

SO ORDERED.

GEORGE B. DANIELS
UNITED STATES DISTRICT JUDGE

[18] Defendants' motion raises arguments regarding Plaintiff's failure to prove a municipal policy or custom as part of her Section 1983 claims and the legal relationship between MaBSTOA and Defendant Metropolitan Transportation Authority. (Defs.' MSJ at 23–24, 31.) Because this Court grants Defendants' motion on other grounds, it does not reach either of these issues.